Appellant, Russell Johnson, appeals from a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of his minor child, Michael Johnson,[1] to the Butler County Children Services Board ("BCCSB"). We affirm.
Michael, who was born on November 11, 1988, and his sister, Sierra, who was born on December 9, 1990, were first involved with BCCSB in April 1992. At that time, appellant contacted BCCSB requesting placement of his two children because he could not care for them on his own. He indicated that his wife, Jennifer Johnson[2] ("Jennifer"), had left the household and he did not have medicine to treat Sierra's burns. Sierra had been burned over fifty-four percent of her body when Michael set her crib on fire in February of 1992.
The children were adjudicated neglected and dependent and a case plan was adopted. Dr. Charles Lee conducted psychological evaluations of both parents. Neither parent was found to be mentally ill or mentally retarded; however, both were found to have serious character disorders. Jennifer, especially, as a victim of childhood abuse, was found to be lacking in trust and prone to maladaptive behaviors. Dr. Lee found that appellant was very dependent, likely to have difficulty controlling his emotions, and prone to have difficulty placing the needs of children over his. Dr. Lee recommended parenting classes, individual treatment, and marital counseling. Although their youth and some recognition of their problems was in their favor, his prognosis for the family was guarded.
Michael and Sierra were placed with their paternal grandparents from September 1992 until December 1992. During this time Michael participated consistently in counseling. The children were returned to the parents in December 1992. Thereafter, Michael's attendance at therapy was inconsistent and therapy was terminated in early 1993.
Another sibling, Brittany, was born March 2, 1993. The Johnsons divorced in 1995. Appellant again contacted BCCSB in July 1996. Jennifer had left the children with appellant, but he could not keep them as he was living with his girlfriend in an efficiency and the landlord had threatened eviction.
The children were adjudicated neglected and dependent on December 17, 1996. Both parents were again evaluated by Dr. Lee in February 1997. Dr. Lee found that Jennifer exhibited a pronounced personality disorder which is characterized by self-centeredness, impulsiveness, poor judgment, and the potential for acting out which can be aggressive. He also found that she had a likely substance abuse problem.
Appellant indicated that he had contacted BCCSB because he was unable to care for the children. Appellant reported that he was again hoping to reunite with Jennifer. Appellant stated that if the children were placed in his custody, he would allow Jennifer to move in "the next day." Appellant indicated that he believed the children should remain in foster care for one more year, while he and Jennifer worked on "honesty, truth, parenting classes, and counseling."
Dr. Lee found that appellant's overall profile described someone who tends to be self-centered and demanding of attention from others. There were also indications of unrealistic self-appraisal. Appellant was found to be quite dependent in his orientation indicating that he will seek out others to help him with the demands of adulthood and parenting. Scales assessing narcissistic and antisocial tendencies were significantly elevated. Other testing indicated marked levels of depression and anxiety and predicted the potential for a substance abuse problem.
During 1997, Michael's foster care placement changed twice due to acting out behaviors. Appellant did not attend visitation with his children from February 1997 through October 1997. On May 8, 1997, BCCSB moved for permanent custody of the children. The court heard the matter on October 24, 1997, October 27, 1997, and February 6, 1998. Appellant did not appear at the hearing on October 24, and his attorney moved to withdraw, noting that he had not contacted her. Appellant appeared on October 27, and stated that he did not attend the first day because he did not have a ride, could not find an available telephone, and had slit his wrists the previous night. Counsel for appellant was reappointed.
Dr. Lee testified concerning his evaluations summarized above. Dr. Lee noted that appellant's prognosis for parenting was guarded in terms of his overall stability and ability to be an independent caretaker. He noted that the prognosis was more dismal than in 1992 because during the intervening five years the behavior patterns were more entrenched. Dr. Lee testified that he did not believe that appellant could parent independently. Regarding Jennifer, Dr. Lee noted that her potential for acting out and developing a personality disorder was even more apparent than it had been during the 1997 evaluation. Dr. Lee found that Jennifer could be a good parent when compensated, but there would be cycles where she would act out and be unavailable to her children.
At the continuation of the hearing on February 6, 1998, Michael's caseworker, Kristin Merritt, testified that Michael had been in his current foster care placement since October 1997. She reported that he had problems with previous foster care placements due to his acting out behaviors, but that the current placement had set appropriate limits early. She also noted that Michael had bonded with his foster father. Michael was receiving therapy and had also bonded well with his therapist. Merritt testified that Michael sometimes said he wanted to live with his mother, sometimes with his father, and sometimes expressed a desire to be adopted.
Appellant testified that he initially agreed that it was best for all three of his children that they be adopted. He testified that he had changed his mind about Michael because his foster care placements had not been as successful as those for Brittany and Sierra. He stated that if he was granted custody of Michael, his landlord would convert his one bedroom apartment into a two bedroom apartment and his girlfriend would quit her job and see that Michael got to school and therapy appointments.
At the conclusion of the hearings, the trial court determined that it was in the best interest of the children to be placed outside the home. The trial court noted that the parents had failed to demonstrate consistent parenting skills to meet the needs of the children. The trial court specifically noted that appellant had not been capable and could not cope with parenting his children alone. On March 9, 1998, the trial court issued a decision that granted BCCSB's motion, awarded permanent custody to BCCSB, and terminated appellant and Jennifer's parental rights.
Appellant appeals from this decision and raises a single assignment of error:
 THE TRIAL COURT'S DECISION PLACING CUSTODY WITH THE BCCSB IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
In his assignment of error, appellant argues that the evidence was insufficient to support the trial court's determination that Michael could not or should not be placed with appellant within a reasonable period of time. In addition, appellant argues that the evidence was insufficient to support the trial court's determination that it was in Michael's best interest to grant permanent custody to BCCSB.
If a child is adjudicated a dependent child, a court may grant permanent custody to an agency if the court determines, by clear and convincing evidence, that permanent custody is in the child's best interest and the child cannot or should not be placed with either of his parents within a reasonable time. R.C. 2151.35.3(A)-(4); R.C. 2151.41.4(B)(1). Clear and convincing evidence is that which will "`* * * produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985), 18 Ohio St.3d 361,368.
A court must find that a child cannot or should not be placed with a parent within a reasonable time if the court finds by clear and convincing evidence that one or more of the statutory factors in R.C. 2151.41.4(E) exist. Relevant to the present case is R.C. 2151.41.4(E)(1) which provides:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
The record contains clear and convincing evidence that appellant has continuously and repeatedly failed to substantially remedy the conditions that caused Michael to be placed outside his home. Appellant was unable to care for his children and requested placement with BCCSB on two occasions. Appellant did not remedy this condition and even acknowledged that adoption would be in his children's best interest, although he later changed his mind about Michael. Appellant failed to follow through with therapy and drug and alcohol assessments.
Appellant claimed that his girlfriend would assist in taking care of Michael. However, this girlfriend did not testify and there was no indication that she could deal with Michael and his behavioral problems. It is also noteworthy that as recently as Dr. Lee's February 1997 evaluation, appellant indicated that he hoped to reunite with Jennifer. Although Jennifer has not appealed the decision to terminate her parental rights, we note that the evidence of her inability to consistently parent was overwhelming.
Finally, both of Dr. Lee's evaluations revealed that, although not mentally ill, appellant's personality disorders would prevent him from being a consistent parent, especially given Michael's special needs for firm, consistent discipline. Thus the record contains clear and convincing evidence that appellant has continuously and repeatedly failed to substantially remedy the conditions that caused Michael to be placed outside of his home.
Appellant also argues that the evidence was insufficient to support the trial court's determination that it was in Michael's best interest to grant permanent custody to BCCSB. In determining the best interest of a child, R.C. 2151.41.4(D) provides that a court must consider all relevant factors, including the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
The record contains clear and convincing evidence that it was in Michael's best interest to grant permanent custody to BCCSB. Appellant has been diagnosed with longstanding personality disorders which prevent him from being a consistent parent. A courtappointed special advocate who had ongoing contact with the family noted that appellant only seemed interested in seeing his children while he entertained some hope of reunification with Jennifer. Appellant failed to visit Michael at all for significant periods of time during 1996 and 1997. He also failed to attend a specially arranged Saturday basketball game.
Michael has a demonstrated need for consistency. After two less successful foster care placements, Michael had adjusted well to his current foster family and was receiving appropriate therapy. An adoption specialist testified that with access to statewide networks, an appropriate adoptive placement could be made. The guardian ad litem recommended that BCCSB be granted permanent custody so Michael's life would not be "put on hold forever." Finally, as previously discussed, appellant has demonstrated his inability to provide a permanent and stable home for Michael. Thus, the evidence presented indicates that a permanent and stable home for Michael cannot be achieved without permanent custody being granted to BCCSB.
Accordingly, we find that the trial court's decision to grant permanent custody to BCCSB was in Michael's best interest and supported by clear and convincing evidence. Appellant's sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] Appellant does not contest the termination of his parental rights in regard to Michael's sisters, Brittany and Sierra.
[2] Jennifer Johnson has not appealed the termination of her parental rights.